UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHELLE RENAE HENRY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 3:18-CV-372 JD |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## **OPINION AND ORDER**

Plaintiff Michelle Renae Henry alleges that she has been disabled since September 15, 2013. She filed a complaint in this Court seeking review of the final decision of the Defendant, the Commissioner of Social Security, denying her application for social security disability benefits [DE 1].[1] The matter is briefed and ripe for decision [DE 16; DE 22; DE 25]. For the reasons stated below, the Court remands this matter to the Commissioner for further proceedings.

### I. FACTS

Ms. Henry filed an application for disability insurance benefits in 2014, alleging that degenerative disc disease and other back problems, numbness in her extremities, arthritis, botched hernia surgeries, bowel obstructions, and implanted bladder and rectal slings prevented her from working since September 15, 2013. Before ceasing work, Ms. Henry was employed for twelve years as a full-time hotel clerk and for some time as a part-time housekeeper and cashier for various gas stations and convenience stores.

---

[1] Ms. Henry was subsequently found to be disabled as of August 10, 2017, thus the parties agree that the relief requested should be modified to consider whether she was disabled prior to that date. Accordingly, the Court GRANTS the uncontested motion in this respect [DE 26].

Ms. Henry's medical history is extensive. She underwent eight surgeries from 1994 to 2014 in order to repair hernias and resulting complications. She also underwent procedures to resection her bowels in 2008 and install a bladder sling in 2009. Her back problems led her to undergo a discectomy and fusion procedure in 2003. Despite physical therapy, chiropractor visits, and ongoing medical treatment, her lower back pain continued to worsen in 2012 and became marked by shooting pain in her right leg. Additionally, Ms. Henry has been diagnosed by her primary care physician, Dr. John Kelly, with obesity, diabetes mellitus, lumbar disk degeneration, and chronic obstructive pulmonary disease ("COPD"). She reports daily headaches, fatigue, vertigo, the inability to lift more than ten pounds, and incontinence. In 2013, her pain and other symptoms made it so difficult for her to sit, stand, or walk for extended periods of time that she ceased working.

In October and November 2014, state agents opined that Ms. Henry suffered from degenerative disc disease but that the impairment was non-severe. After these evaluations, Ms. Henry began seeing a physical rehabilitation specialist, Dr. Sridhar Vallabhaneni, who diagnosed her with lumbar spinal stenosis, lumbar radiculopathy, and low back pain. On examination, he documented that she demonstrated an abnormal range of motion in her back and an antalgic gait. He noted that her MRI revealed a pathology at L5/S1 which "correlate[d] with her symptoms." She then completed a course of physical therapy without much result. She was referred for a surgical consultation in February 2017.

Administrative Law Judge Kevin Plunkett ("ALJ") held a hearing on July 21, 2017, during which Ms. Henry and vocational expert Stephanie Archer ("VE") testified. Ms. Henry explained that she suffers from constant pain in her right leg which makes it difficult for her to stand and walk. She must stop and rest when moving from her living room to the bathroom. The

chronic pain often rises along her spine to her head, causing debilitating headaches as often as four times a day; she needs to lie down in a dark place to relieve the headaches. She also suffers from vertigo on a weekly basis which lasts for about an hour at a time. In response, she began using a cane in 2016 and was prescribed a seated walker and motorized scooter. Sitting longer than fifteen minutes causes her discomfort and she must then stand. Lifting so much as a gallon of milk causes her hands to shake and oftentimes, she drops things. Further complicating matters are her respiratory attacks which require the daily use of a rescue inhaler, diabetes which remains uncontrolled with medication, and stomach pain/bowel issues caused by multiple bowel surgeries. Ms. Henry testified that her ailments prevent her from performing most household chores, preparing meals, or dressing herself. She leaves the house only for medical visits, partly due to her mobility issues and partly due to her anxiety about falling. She's been seen in the emergency room numerous times because of falling. Even at home, she has only accessed the first floor of her house since 2016.

  In response to hypothetical questions posed by the ALJ, the VE testified that a person of Ms. Henry's age and background but limited to light work (and a few other exertional limitations) could perform work as a hotel clerk, either as Ms. Henry once performed the job or as generally performed. Per the VE, that person could also perform work as a front desk receptionist, cashier, and sales attendant. If further limited to sedentary work, then such a person could work as a C.O.D. clerk, scheduling clerk, or lost charge card clerk. The VE testified that in order to be employable, a person cannot be off-task more than five percent of the time or absent more than one day per month. Additionally, the VE indicated that even the sedentary jobs identified would require an employee to be physically capable of gripping with both hands (at least occasionally) and moving around without a walker.

The ALJ issued a decision on August 9, 2017, denying Ms. Henry disability benefits and finding her not disabled under the Social Security Act because she had the residual functional capacity[2] to perform light work including her past work as a front desk clerk. The ALJ opined that for purposes of the step 5 analysis, Ms. Henry could also perform light work as a front desk receptionist, cashier, and sales attendant. On May 15, 2018, the Appeals Council denied her request for review, making the ALJ's decision the final determination of the Commissioner. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Ms. Henry seeks review of the Commissioner's decision, thereby invoking this Court's jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v.*

---

[2] Residual Functional Capacity ("RFC") is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

*Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to the ALJ's findings. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step evaluation to determine whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). In order, these steps are:

    1. Whether the claimant is currently engaged in substantial gainful activity;

    2. Whether the claimant has a medically severe impairment;

    3. Whether the claimant's impairment meets or equals one listed in the regulations;

    4. Whether the claimant can still perform relevant past work; and

    5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner finds a disability. 20 C.F.R. § 404.1520(a)(4)(iii). However, if no listing is met or equaled, then between steps three and four, the ALJ must assess the claimant's RFC, which is used in turn to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Ms. Henry argues that the ALJ's RFC assessment is not supported by substantial evidence where the ALJ did not weigh any treating physicians' opinions and omitted sufficient analysis of her non-severe impairments. As explained below, the Court agrees that the RFC determination lacks sufficient evidentiary support. This shortcoming requires remand for further assessment but does not direct a finding of disability. Ms. Henry also contends that the ALJ erred in refusing to consider medical evidence submitted within five days of the hearing per 20 C.F.R. § 404.935. However, the Court need not resolve that issue here because the previously excluded evidence is now available for future consideration.

The ALJ must determine an individual's RFC, meaning "what an individual can still do despite his or her limitations," SSR 96–8p, based upon medical evidence as well as other evidence, such as testimony by the claimant. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, even as to limitations that are not severe. *Id*.; *see* 20 C.F.R. §

404.1529(a) (in making a disability determination, the ALJ must consider all of a claimant's symptoms, including pain, and how those symptoms affect a claimant's daily life and ability to work). The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007).

The ALJ in this case concluded that Ms. Henry had the RFC to perform a limited range of light work, including the lifting/carrying of no more than twenty pounds occasionally, with frequent lifting/carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b); SSR 83-10. The ALJ opined that Ms. Henry could also sit and stand/walk for six hours in a workday. In making his RFC determination, the ALJ failed to rely on a single medical opinion that translated a physical assessment of Ms. Henry into work-related functional limitations. The only expert who provided a medical opinion regarding Ms. Henry's ability to work were the state agents.[3] Yet, the ALJ gave "little weight" to the October and November 2014 state agency assessments, noting that they predated important treatment history/imaging evidence and failed to consider Ms. Henry's obesity and complaints of back pain. Moreover, the state agents did not proceed to offer any opinion as to Ms. Henry's functional limitations. Accordingly, the ALJ could only conclude that Ms. Henry's medical history supported the functional limitations included in his RFC determination by impermissibly playing doctor. *Goins v. Colvin*, 764 F.3d 677, 680 (7th

---

[3] Although Dr. Kelly provided a medical source statement dated July 6, 2017 (R. at 74-87), which indicated that Ms. Henry required an ambulatory device and was functionally disabled, the ALJ declined to consider this evidence because he determined that it was tardily submitted without sufficient good cause. While the ALJ's discussion in this respect is somewhat suspect given Ms. Henry's repeated attempts to timely obtain the report consistent with 20 C.F.R. § 404.935 and 416.1435, this evidence from a treating physician is now available for reconsideration.

7

Cir. 2014) (finding that the ALJ played doctor by relying on the results of a medical test without having it reviewed by a physician).

This is not to say that the ALJ wholly failed to recite medical evidence produced by Ms. Henry's treating medical providers. For example, the ALJ referred to various treatment notes from Drs. Vallabhaneni and Kelly and discussed the findings made during those sessions. However, the ALJ then impermissibly took it upon himself to interpret that medical data in reaching his conclusion that the record does not support Ms. Henry's alleged limitations relative to sitting, standing, and walking, and in ultimately finding that Ms. Henry's impairments would affect her ability to perform anything more than light work. By way of example, even after recognizing that Ms. Henry sustained at least four slip and falls and had a walker/motorized scooter prescribed by Dr. Kelly, the ALJ relied on random treatment notes indicating normal balance and gait to "find little support for use of a cane and other assistive devices." Yet, the ALJ was required to rely on medical experts rather than "determining the significance of particular medical findings [himself]." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014). Thus, the ALJ committed reversible error by substituting his own knowledge for that of any trained physician or medical staff in determining Ms. Henry's RFC. *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Suide v. Astrue*, 371 F. App'x 684, 689-90 (7th Cir. 2010) (holding that the ALJ's rejection of a treating physician's opinion created an evidentiary deficit requiring remand, where other evidence in the record did not address the claimant's functional limitations); *Fly v. Colvin*, No. 3:14-cv-1840, 2015 WL 5124957, at *4 (N.D. Ind. Aug. 31, 2015) ("An ALJ is not a doctor, and his limitations must find a basis in the evidence."). Ultimately, it was the ALJ's responsibility to recognize the need for a further medical evaluation for purposes of deriving Ms.

Henry's actual RFC, and remand is necessary here. *See, e.g., Smith v. Apfel*, 231 F.3d 433, 437-38 (7th Cir. 2000).

For purposes of remand, the Court notes that limitations resulting from severe pain are central to Ms. Henry's claim of disability. During her hearing, Ms. Henry testified that she stopped working in 2013 because she suffered from pain in her right leg that was so intense that she "couldn't work" and "couldn't function." Further, Ms. Henry described pain that went into her right ankle/foot which made it feel like she was "walking barefoot on gravel." Her pain further "radiates" through her body and causes daily headaches that require her to lie in a dark place for ten or fifteen minutes. Ms. Henry communicated similar symptoms to her doctors consistently for years.[4]

In addition, Ms. Henry's subjective reports are not the only evidence of her suffering from debilitating pain. An MRI from May 16, 2016 which showed "moderate right neural foraminal stenosis at L5-S1" was interpreted by a radiologist as possibly contributing to her radicular symptoms. (R. at 792). Dr. Vallabhaneni opined in June 2016 that the "pathology at L5/S1 does correlate with her symptoms." (R. at 812).

The ALJ's discounting Ms. Henry's complaints of low back pain merely because she has shown at times "generally retained strength" and an "absence of motor deficits" indicates that the ALJ impermissibly "cherry-picked" facts that supported a finding of non-disability while ignoring extensive evidence that pointed to a disability finding. *See Denton v. Astrue*, 596 F.3d

---

[4] For example, the surgeon who performed her 2003 discectomy wrote that she "presented with excruciating leg pain, which had not responded to conservative measures." (R. at 710). In 2009, she went to the hospital for "burning" pain brought on by bending over. (R. at 312). She told her primary care physician for years that she suffered constant pain in her back, neck, skull, limbs, and bones that became worse with sitting and walking. (R. at 512, 534, 539). To her rehabilitation specialist, she reported constant sharp, burning pain growing worse despite treatment. (R. at 804, 807, 816).

419, 425 (7th Cir. 2010). Moreover, the ALJ's reliance on those sporadic notations fail to recognize the waxing and waning of symptoms like pain. *See Scrogham v. Colvin*, 765 F.3d 685, 696 (7th Cir. 2014). And to the extent that the ALJ wanted to discredit Ms. Henry (as he did) because she didn't pursue epidural steroid injections, then the ALJ should have explored the reasons for that treatment decision, given Ms. Henry's reported anxiousness about undergoing injections. (R. at 824). *See* SSR 16-3p. In short, the ALJ must provide specific reasons that justify the weight given to Ms. Henry's symptoms and the decision must be consistent with and supported by the evidence. *Id.*; *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

Finally, on remand, the ALJ must take care to fully consider the impact of Ms. Henry's non-severe impairments. *Denton*, 596 F.3d at 423. Even if the non-severe impairments may have no effect on the claimant's RFC, an ALJ must explain why. *Id.* Here, the ALJ recognized that Ms. Henry suffered from the non-severe impairments of diabetes, stomach/hernia issues, and upper extremity pain which caused some limitations on Ms. Henry's ability to work. However, the ALJ failed to explain how these limitations (even if minimal) were accounted for or otherwise did not impact the RFC determination. *Young*, 362 F.3d at 1002-03 (indicating that an ALJ should capture all of a claimant's problems within the RFC and build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, [the court] may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.").

For the reasons discussed, the Court cannot conclude that the RFC was supported by substantial evidence. That error is not harmless. A more restrictive RFC finding supported by adequate medical evidence could very well affect the disability finding.[5]

## IV. CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval. *See Cooke v. Jackson Nat'l Life Ins. Co.*, 882 F.3d 630, 631 (7th Cir. 2018).

SO ORDERED.

ENTERED: August 8, 2019

                                        /s/ JON E. DEGUILIO
                                        Judge
                                        United States District Court

---

[5] Because an unsupported RFC served as the basis of the VE's testimony and the ALJ's finding that Ms. Henry could perform her past work and other work in the economy, the Court cannot affirm the findings at steps four and five.